UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| **CHAMBERS OF**<br>**JOHN MICHAEL VAZQUEZ**<br>**UNITED STATES DISTRICT**<br>**JUDGE** | **FRANK R. LAUTENBERG**<br>**POST OFFICE AND**<br>**COURTHOUSE**<br>**2 FEDERAL SQUARE, ROOM 417**<br>**NEWARK, NJ 07102**<br>**973-297-4851** |

May 18, 2016

VIA ECF

## LETTER ORDER AND OPINION

Re:   Mark Drzala, MD on assignment of Louis V. v. Horizon Blue Cross Blue
      Shield and Anthem Blue Cross Blue Shield of Ohio
      Civil Action No. 15-8392

Dear Litigants:

The Court has reviewed Defendant Horizon Blue Cross Blue Shield ("Horizon") and Defendant Anthem Blue Cross Blue Shield of Ohio's ("Anthem," collectively "Defendants") Motions to Dismiss pursuant to Rule 12 of the Federal Rules of Civil Procedure. For the reasons stated below, the motions are granted in part and denied in part. Specifically, the motions to dismiss with respect to Counts I, III and IV are granted and those counts are dismissed with prejudice. As to the sole remaining count, Count II, the motion is denied without prejudice.

This case concerns Defendants' alleged failure to reimburse Plaintiff Mark Drzala ("Drzala" or "Plaintiff") for the medical procedures he performed on Defendants' insured, Louis V. Plaintiff originally filed a Complaint on October 5, 2015, against Defendants in New Jersey Superior Court. D.E. 1, Ex. A. In his Complaint, Plaintiff asserted four causes of action: Count I - Breach of Contract, Count II - Failure to Make all Payments Pursuant to Member's Plan under 29 U.S.C. § 1132(a)(1)(B), Count III - Breach of Fiduciary Duty and Co-Fiduciary Duty under 29 U.S.C. § 1132(a)(3), 29 U.S.C. § 1104(a)(1) and 29 U.S.C. § 1105(a), and Count IV - Failure to Establish/Maintain Reasonable Claim Procedures under 29 C.F.R. 2560.503-1. On December 2, 2015, Defendants removed the matter to this Court. D.E. 1. Defendants now move to dismiss Plaintiff's Complaint. D.E. 9; D.E. 17.

On May 5, 2016, the Court held oral argument on these motions. D.E. 41. Defendants allege that Plaintiff's Breach of Contract claim is preempted by the Employee Retirement Income Security Act ("ERISA"). Defendants further allege that the anti-assignment provision contained

within the Siemens Benefits Plan (the "Plan")[1] prevents assignment from Louis V to Dr. Drzala, and therefore Plaintiff lacks standing to bring these claims. Additionally, Defendants take issue with the duplicative relief requested in Count II and Count III. Defendants further allege that equitable relief is the only remedy available under Count III, and that Plaintiff fails to sufficiently state the type of equitable relief he seeks. Defendants also allege that Count IV does not contain a private right of action and should therefore be dismissed. Defendant Horizon separately alleges that because it does not administer the Plan at issue, it is not a "fiduciary" under ERISA and the Complaint should be dismissed against it in the entirety.

Plaintiff voluntarily dismissed Count I on May 4, 2016. D.E. 39. Plaintiff argues, however, that the anti-assignment clause in the Plan is ambiguous and thereby void.[2] Further, Plaintiff argues that Count III should not be dismissed at this early stage of the proceedings, and distinguishes Defendants' cases cited in favor of a dismissal of Count IV.[3] Lastly, Plaintiff argues that Horizon's status as a fiduciary is fact-specific, requiring discovery, and that dismissal at this point would be premature.

The facts of this matter derive from Plaintiff's Complaint, the exhibits attached thereto, as well as the exhibits attached to each party's motion papers. *See Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993) ("[A] court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document."). The additional documents considered by the Court are the Plan, the assignment at issue, and documents related to the internal benefits' appeal. Louis V, during the relevant time, was enrolled in the Plan which is administered by Defendants Horizon and Anthem. D.E. 1, Ex. A ¶ 14. Plaintiff Drzala, a healthcare provider, performed spinal surgery on Louis V on or about April 23, 2013. D.E. 1, Ex. A ¶¶ 5-6. Plaintiff then requested reimbursement, in the amount of $249,435.00, for the medical services rendered to Louis V. D.E. 1, Ex. A ¶ 8. Subsequently, Plaintiff was partially denied reimbursement. D.E. 1, Ex. A ¶ 9. After going through the administrative appeals process maintained by Defendants, Plaintiff maintains he was underpaid in the amount of $224,751.35. D.E. 1, Ex. A ¶¶ 10-16. Plaintiff received an assignment of benefits from Louis V in order to bring this claim under ERISA. D.E. 1, Ex. A ¶

---

[1] The Plan is attached to Defendant Anthem's Motion to Dismiss and is titled: "Siemens Corporation Group Insurance and Flexible Benefits Program." D.E. 9, Ex. A. Louis V was a member of the Plan during the relevant period.

[2] Plaintiff also argues waiver as to the anti-assignment clause. Because the Court is denying the motion as to Count II for the reasons stated herein, Plaintiff's argument concerning waiver is not addressed. Nevertheless, since the issue of waiver is a fact-sensitive issue, the parties may take discovery on the issue of waiver of the anti-assignment provision. *See Atlantic Orthopaedic Ass. v. Blue Cross & Blue Shield of Tex.*, No. 15-1854, 2016 WL 889562, at *5 (D.N.J. Mar. 7, 2016) (finding the issue of waiver to be "fact-intesive" and allowing parties to explore the issue further in discovery).

[3] Plaintiff conceded at oral argument that he did not have any legal authority indicating that Count IV permits a private right of action. *See* Oral Arg. Tr. at 3:8-9.

7.[4] Plaintiff therefore brings the present action to recover the outstanding balance. D.E. 1, Ex. A ¶ 17.

Defendant Anthem brings its Motion to Dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction and under Rule 12(b)(6) for failure to state a claim upon which relief can be granted, while Defendant Horizon limits its motion to 12(b)(6). D.E. 9 at 4; D.E. 17 at 7-8. A motion to dismiss based on standing is usually brought pursuant to Rule 12(b)(1). *See N. Jersey Brain & Spine Ctr. v. Aetna, Inc.*, 801 F.3d 369, 371 n.3 (3d Cir. 2015) ("Ordinarily, Rule 12(b)(1) governs motions to dismiss for lack of standing, as standing is a jurisdictional matter."). However, in cases where a party claims derivative standing to sue under ERISA § 502(a), it is a statutory limitation, and thus non-jurisdictional and properly brought under Rule 12(b)(6). *See Cohen v. Horizon Blue Cross Blue Shield of N.J.*, No. 15-4525, 2015 WL 6082299, at *1 (D.N.J. Oct. 15, 2015). Regardless, "a motion for lack of statutory standing is effectively the same whether it comes under Rule 12(b)(1) or 12(b)(6)." *N. Jersey Brain & Spine Ctr.*, 801 F.3d at 371 n.3. Therefore, this Court will analyze the entirety of Defendants' Motions pursuant to Rule 12(b)(6).

To withstand a motion to dismiss under Rule 12(b)(6), a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A complaint is plausible on its face when there is enough factual content "that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although the plausibility standard "does not impose a probability requirement, it does require a pleading to show more than a sheer possibility that a defendant has acted unlawfully." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (internal quotation marks and citations omitted). As a result, a plaintiff must "allege sufficient facts to raise a reasonable expectation that discovery will uncover proof of her claims." *Id.* at 789.

In evaluating the sufficiency of a complaint, district courts must accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008). A court, however, is "not compelled to accept unwarranted inferences, unsupported conclusions or legal conclusions disguised as factual allegations." *Baraka v. McGreevey*, 481 F.3d 187, 211 (3d Cir. 2007). If, after viewing the allegations in the complaint most favorable to the plaintiff it appears that no relief could be granted under any set of facts consistent with the allegations, a court must dismiss the complaint for failure to state a claim. *DeFazio v. Leading Edge Recovery Sols.*, No. 10-2945, 2010 WL 5146765, at *1 (D.N.J. Dec. 13, 2010).

Defendants' primary argument is that the Plan contains an anti-assignment clause and therefore the assignment from Louis V to Plaintiff Drzala is invalid. Here, the anti-assignment

---

[4] Although the Complaint is not clear as to the timing of the assignment, the assignment itself demonstrates that it was executed after the appeals process began. *See* D.E. 1, Ex. B. According to Defendants, the assignment occurred after the appeals process concluded, and according to the documents, Defendants appear to be correct. *See* D.E. 17 at 11; D.E. 1, Ex. B. However, the supporting documentation in the appeals process likewise reflects that Plaintiff Drzala was an active participant and provided material information to Defendants from the outset.

3

clause states: "Generally, your benefit from any Plan may not be assigned, sold, transferred, or pledged to anyone else." D.E. 9, Ex. A at 180. ERISA's civil enforcement provision provides that "[a] civil action may be brought ... by a *participant* or *beneficiary* ... to recover benefits due him under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B) (emphasis added). As a result, standing is generally limited to "participants" and "beneficiaries." *Id.*; *see Pascack Valley Hosp., Inc. v. Local 464A UFCW Welfare Reimbursement Plan*, 388 F.3d 393, 400 (3d Cir. 2004). The Third Circuit has determined that an assignment of benefits in the ERISA context is permissible. *See N. Jersey Brain & Spine Ctr.*, 801 F.3d at 372. Therefore, "[h]ealthcare providers that are neither participants nor beneficiaries in their own right may obtain derivative standing by assignment from a plan participant or beneficiary." *Id.*

Thus, while assignment clauses are permissible, the question in this matter is whether an anti-assignment clause effectively voids any attempted assignment. In the Third Circuit, it remains an open issue as to whether anti-assignment clauses contained in healthcare plans are enforceable. *See Advanced Orthopedics & Sports Med. v. Blue Cross Blue Shield of Mass.*, No. 14-7280, 2015 WL 4430488, at *4 (D.N.J. July 20, 2015) (noting that the Third Circuit has not yet addressed the issue of anti-assignment clauses in the ERISA context); *Neurological Surgery Assocs. P.A. v. Aetna Life Ins. Co.*, No. 12-5600, 2014 WL 2510555, at *2-3 (D.N.J. June 4, 2014) (noting that while the Third Circuit has not addressed the question of anti-assignment clauses in ERISA plans, the majority position appears to permit them). Most courts that have addressed this issue (both within and outside this Circuit) have found anti-assignment clauses to be enforceable, provided the clause is unambiguous. *See e.g.*, *Davidowitz v. Delta Dental Plan of Cal., Inc.*, 946 F.2d 1476, 1478 (9th Cir. 1991) (enforceable where intent is clear); *Cohen v. Indep. Blue Cross*, 820 F. Supp. 2d 594, 605 (D.N.J. 2011) (noting that most courts have found that "unambiguous anti-assignment provisions in group health care plans are valid"); *Briglia v. Horizon Healthcare Servs., Inc.*, No. 03-6033, 2005 WL 1140687, at *4 (D.N.J. May 13, 2005) (collecting "a number of federal and state courts [which] have found that unambiguous anti-assignment provisions in group health care plans are valid"). Thus, a prerequisite to a valid anti-assignment provision is unambiguity. *See Physicians Multispecialty Grp. v. Health Care Plan of Horton Homes, Inc.*, 371 F.3d 1291, 1295 (11th Cir. 2004) (adopting the reasoning of "the majority of federal courts that have concluded that an assignment is ineffectual if the plan contains an *unambiguous* anti-assignment provision") (emphasis added); *Advanced Orthopedics & Sports Med.*, 2015 WL 4430488, at *5-6 (noting that the clause is not ambiguous and reaffirming the conclusion that "*unambiguous* anti-assignment clauses in the ERISA context are valid") (emphasis added).

A term is ambiguous where the language "is susceptible to more than one reasonable interpretation." *In re Unisys Corp. Retiree Med. Benefits ERISA Litig.*, 58 F.3d 896, 903 (3d Cir. 1995). In determining whether a particular clause in a plan document is ambiguous, courts must first look to the plain language of the document. *Id.* at 902. If the plain language is clear on its face, then the terms of the plan control and courts may not look to other evidence. *See Taylor v. Cont'l Grp. Change in Control Severance Pay Plan*, 933 F.2d 1227, 1234 (3d Cir. 1991). However, if the language lends itself to more than one reasonable interpretation, then courts may look to extrinsic evidence to resolve any ambiguities. *See id.* at 1232 ("When an ERISA plan is ambiguous, ascertaining its meaning requires examining many factors, which may include considering how the plan was understood by its beneficiaries."). Thus, when a term in a contract is sufficiently ambiguous, it creates a triable issue of fact. *Id.* at 1234 (finding the term "successor"

4

ambiguous and reversing the District Court's granting of summary judgment in order to permit introduction of extrinsic evidence); *Briglia*, 2010 WL 4226512, at *5 ("[T]he interpretation of ambiguous plan provisions is a question of fact.") (internal citations omitted).

As noted, the anti-assignment clause in this matter states: "Generally, your benefit from any Plan may not be assigned, sold, transferred, or pledged to anyone else." D.E. 9, Ex. A at 180. The term "generally" is not defined in the Plan. "In interpreting the provisions of an ERISA plan, terms must be given their plain meanings." *Briglia*, 2010 WL 4226512, at *4. Determining a term's plain meaning often involves consulting the dictionary definition of the term. *See e.g., Nat'l Credit Union Admin. Bd. v. Nomura Home Equity Loan, Inc.*, 764 F.3d 1199, 1227 (10th Cir. 2014) ("Courts often begin an ordinary meaning analyses by consulting contemporary dictionary definitions"); *Util. Workers Union of Am., Local 601 v. Public Serv. Elec. & Gas Co.*, No. 07-2378, 2009 WL 331421, at *8 (looking to the dictionary to determine the plain language of an agreement). The term "generally" is given three definitions by the Random House unabridged dictionary: "1. usually; commonly; ordinarily ... 2. with respect to the larger part; for the most part ... 3. without reference to or disregarding particular persons, things, situations, etc., that may be an exception." *Random House Dictionary of the English Language* 795 (2d ed. 1987). The plain meaning of this term is clear: "generally" means most of the time (but not always) and necessarily implies exceptions. The parties themselves at oral argument agreed that the word "generally" implies the existence of exceptions.[5] Thus, the word "generally" is unambiguous. However, "generally" inherently implicates an exception or exceptions. Unfortunately, the "exceptions" here are undefined, thereby creating ambiguity in the anti-assignment clause. The specific exceptions that apply here are subject to more than one reasonable interpretation. While Defendant Anthem asked this Court to read in the exception of requiring prior approval before assignment, there is no evidence as to why this exception should be presumptively read in to the clause. *See* Oral Arg. Tr. at 8:6-9. In fact, Anthem's reading of this exception in to the clause while Plaintiff divined no such particular exception further highlights the difficulty in interpreting the anti-assignment provision in Anthem and Horizon's favor as a matter of law.[6]

Other examples in this District in which the court found an anti-assignment provision unambiguous are significantly more detailed and clear. For example, in *Advanced Orthopedics & Sports Medicine v. Blue Cross Blue Shield of Massachusetts*, Judge Wolfson found an anti-

---

[5] Defendant Anthem conceded that "Generally would be absent a special circumstance." Oral Arg. Tr. at 8:5-6. Plaintiff interprets generally to mean "in most cases but not all ... always room for exceptions." Oral Arg. Tr. at 17:6-10. Defendant Horizon agrees with Plaintiff's definition, "that generally means in most cases, subject to a few exceptions." Oral Arg. Tr. at 21:14-16.

[6] Defendant Horizon cites *Rothschild v. Foremost Insurance Company* for the proposition that "courts are not afforded the luxury to change the language of the insurance policy to create ambiguity." *See* D.E. 17 at 10 (citing *Rothschild v. Foremost Ins. Co.*, 653 F. Supp. 2d 526, 532 (D.N.J. 2009)). The Court agrees with this statement but finds that this goes against Horizon's argument. The Court cannot rewrite the clause by removing the term "generally" and thus eliminating any ambiguity the term creates.

assignment provision in an ERISA plan to be unambiguous. 2015 WL 4430488, at *5-6. The anti-assignment clause stated:

> You cannot assign any benefit or monies due from this health plan to any person, corporation, or other organization without Blue Cross and Blue Shield's written consent. Any assignment by you will be void. Assignment means the transfer of your rights to the benefits provided by this health plan to another person or organization.

2015 WL 4430488, at *3. The clause in *Advanced Orthopedics* not only defines the instances in which a beneficiary *can* assign (in the case of written consent), but also provides for the result if an improper assignment does, in fact, occur (it will be void). The anti-assignment provision in *Advanced Orthopedics* also has the additional benefit of explicitly defining what an assignment is. The clause in this case, on the other hand, has the modifier "generally," is followed by no clear exceptions, and does not contain any provision explaining what occurs in the case of an assignment. Because the term "generally" necessarily implies exceptions, and the reader of the plan is left guessing as to what those exceptions are, the Court does not find this clause unambiguous as a matter of law.[7]

---

[7] Defendant Horizon raises an additional argument that the assignment is invalid due to timing. D.E. 17 at 11-12. Specifically, Horizon alleges that since the assignment was made after the claims review process began, it is invalid as a matter of law. This argument is different than the position that the anti-assignment provision in the Plan precluded the assignment to Plaintiff in the first place. Instead, Horizon focuses on the *timing* of the assignment, arguing that because the assignment came after the internal appeals process, the assignment is invalid. Contract rights and duties are generally assignable and delegable. *See Citibank, N.A. v. Tele/Resources, Inc.*, 724 F.2d 266, 268 (2d Cir. 1983). In *In re Merck & Co., Inc. Securities, Derivative & ERISA Litigation*, the court held that a post-filing assignment was valid. No. 05-5060, 2015 WL 3823912 (D.N.J. June 19, 2015). There, Plaintiffs received an assignment to the rights in the underlying securities after the initiation of the lawsuit. *Id.* at *2. While Defendants claimed that Plaintiffs lacked Article III standing at the outset of the suit, the court refused to "elevate technicalities over substance." *Id.* at *3. Finding that there was "no question that the real parties in interest when the suit was filed have since authorized the Challenged Plaintiffs to pursue this lawsuit on their behalf," the court refused to grant the Defendants' motion for summary judgment and found the assignment valid. *Id.* at *5. Here, Defendant Horizon alleges that the assignment, while made prior to the onset of litigation, was nonetheless too late since the administrative appeals process had already concluded. D.E. 17 at 11-12. The Court does not find this argument persuasive. Defendant Horizon cites to Judge Hayden's opinion in *Center for Orthopedics & Sports Medicine v. Horizon* in support of its argument. No. 13-1963, 2015 WL 5770385, at *5 (D.N.J. Sep. 30, 2015). However, in *Center for Orthopedics & Sports Medicine*, the case was denied at the summary judgment stage. The Court will therefore deny the motions without prejudice, so the parties can raise the issue of the timing of the assignment at the summary judgment stage. The Court notes that Horizon has not shown that it was materially prejudiced by the timing of the assignment, other than to claim so in a conclusory fashion. Based on the documents reviewed by the Court in relation to the current motion, there does not appear to have been any material prejudice to either Horizon or Anthem based on the timing of

6

Defendant Horizon raises an additional argument that it is not a "fiduciary" as defined by ERISA and therefore should be dismissed. D.E. 17 at 12-14. Under ERISA,

> a person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

29 U.S.C. § 1002(21)(A). ERISA defines "fiduciary" in "*functional* terms of control and authority over the plan." *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 262 (1993) (emphasis in original). This functional definition expands the universe of persons subject to fiduciary duties. *Id.* Thus, the definition of a fiduciary under ERISA is broadly construed. *Edmonson v. Lincoln Nat. Life Ins. Co.*, 725 F.3d 406, 413 (3d Cir. 2013).

Horizon alleges that Plaintiff's Complaint "does not articulate any facts (contrary to *Iqbal* and *Twombly*) explaining how Horizon, specifically, acted as a fiduciary under ERISA in connection with the underlying claims." D.E. 17 at 13. Horizon argues that it performed no fiduciary role in this case and, instead, merely acted in a non-discretionary role. Horizon may well be correct, but it would require the Court to engage in fact-finding beyond that which is permissible at this stage of the matter. At this stage it is not the Court's task to determine whether Horizon is actually an administrator or fiduciary of the Plan. *See Prof'l Orthopedic Assocs., PA v. Excellus Blue Cross Blue Shield*, No. 14-6950, 2015 WL 4387981, at *10 (D.N.J. July 15, 2015). Instead, the Court "must determine whether Plaintiffs have pled sufficient facts to support the plausible inference that [Defendant] exercised control over the administration of benefits with regards to [Plaintiff]." *Id.* This standard sets a low bar, taking the facts pleaded as true and requiring only a *plausible inference* that Defendant exercised control or authority over the Plan's benefits.

Here, Plaintiff alleges that Defendants were acting as fiduciaries under ERISA because they "acted with discretionary authority or control to deny the payment and to manage the administration of the employee benefit plan." D.E. 1, Ex. A ¶ 40. Additionally, Plaintiff alleges that "Defendant Horizon is the Claims Administrator" for the applicable Plan. D.E. 1, Ex. A ¶ 14. This claim is supported by documents attached to the Complaint. *See* D.E. 1, Ex. C. The Third Circuit has held that plan administrators assume the role of fiduciary under ERISA. *Hozier v. Midwest Fasteners, Inc.*, 908 F.2d 1155, 1158 (3d Cir.1990). Taking these facts as

---

this assignment because Plaintiff Drzala was actively involved in the process from the outset. D.E. 1, Ex. A.

true, they create at least a plausible inference that Defendant Horizon exercised sufficient control to qualify as a fiduciary, sufficient to meet the *Iqbal/Twombly* pleading standard.

Courts have consistently held that "[t]he determination of whether a person is a fiduciary is fact-based, and cannot be determined in a motion to dismiss." *Rispler v. Sol Splitz Co., Inc.*, No. 04-1323, 2007 WL 1926531, at *4 (E.D.N.Y. June 6, 2007); *see e.g.*, *Beye v. Horizon Blue Cross Blue Shield of N.J.*, 568 F. Supp. 2d 556, 576 (D.N.J. 2008) ("Because the determination of whether a party is an ERISA fiduciary is a 'functional one' the determination will not typically be resolved at the motion to dismiss stage.") (internal citations omitted). Due to the fact-intensive nature of the inquiry as to fiduciary status under ERISA, the Court cannot say as a matter of law that Horizon is not a fiduciary at this early stage of the proceeding. Horizon's motion is therefore denied.

Defendants next contend that Count III seeks duplicative relief to Count II, and only permits equitable remedies, which Plaintiff does not specify in his pleadings. D.E. 9 at 7-8; D.E. 17 at 18-20. Defendants thus set forth two bases on which to dismiss Count III. The first is that Count III cannot survive in light of Count II as it is improperly duplicative. *See Varity Corp. v. Howe*, 516 U.S. 489, 515 (1996). The second is that Plaintiff has insufficiently pled equitable relief, the only relief available pursuant to Count III. *See Mertens*, 508 U.S. at 255-56 (finding ERISA § 502(a)(3) to only allow for traditional equitable restitution).[8] In response, Plaintiff argues that Count III should survive at least until the conclusion of factual discovery in order to be able to adequately ascertain the available relief. D.E. 25 at 14-15. Normally, the Court would not dismiss Count III at this stage, but Plaintiff's Counsel candidly admitted at oral argument that he could not think of any equitable relief Plaintiff would seek if successful on this Count. *See* Oral Arg. Tr. at 5:2-3. Accordingly, the Court will dismiss Count III.

Defendants final argument is in respect to Count IV: Failure to Maintain Reasonable Claims Procedures under 29 C.F.R. 2560.503-1, which Defendants allege does not permit a private right of action.[9] Judge Linares' opinion in *Cohen v. Horizon Blue Cross Blue Shield of New Jersey*,

---

[8] Plaintiff's bring Count III, Breach of Fiduciary Duty and Co-Fiduciary Duty, under 29 U.S.C. § 1132(a)(3) (codified at § 502(a)(3)), 29 U.S.C. § 1104(a)(1) and 29 U.S.C. § 1105(a). § 1104 provides that "a fiduciary shall discharge his duties with respect to a plan solely in the interests of the participants and beneficiaries." 29 U.S.C. § 1104. § 1105 provides for co-fiduciary duty under specific circumstances. *See* 29 U.S.C. § 1105. § 1132 provides for civil remedies for an ERISA violation, including § 1104 and § 1105. *See Horvath v. Keystone Health Plan E., Inc.*, 333 F.3d 450, 456 (3d Cir. 2003) (Participants and beneficiaries may "seek [ ] to utilize the enforcement provisions contained in § 502(a)(3), 29 U.S.C. § 1132(a)(3), in order to remedy an alleged violation of the fiduciary duties imposed by § 1104, 29 U.S.C. § 1104"). Therefore, none of these statutes permit recovery of non-equitable remedies.

[9] ERISA claims procedure is governed by ERISA § 502(a) (codified as 29 U.S.C. § 1132(a)) and § 503 (codified as 29 U.S.C. § 1133). 29 C.F.R. 2560.503-1 was promulgated by the Secretary of Labor pursuant to 29 U.S.C. § 1133, which grants the Secretary of Labor the authority to promulgate regulations regarding notice provisions to beneficiaries whose claims have been

8

2013 WL 5780815 (D.N.J. Oct. 25, 2013), is instructive on this point. In *Cohen*, Plaintiffs alleged that Defendant Horizon was liable for failing "to provide a full and fair review" of their claims and failing "to make necessary disclosures in accordance with 29 U.S.C. § 1133." *Id.* at *8. Citing to the Third Circuit, Judge Linares concluded that § 503 sets forth basic requirements governing ERISA plans, but does not provide for its own cause of action. *Id.* at *9 (citing *Miller v. Am. Airlines, Inc.*, 632 F.3d 837, 850-51 (3d Cir. 2011)). This is in line with the Supreme Court's reasoning in its opinion in *Massachusetts Mutual Life Insurance Company v. Russell*, where the Court held that "there really is nothing at all in the statutory text to support the conclusion that such a delay [in the plan processing] gives rise to a private right of action for compensatory or punitive relief." 473 U.S. 134, 144 (1985).

While the courts in both *Massachusetts Mutual* and *Cohen* were analyzing procedures claims under 29 U.S.C. § 1133, there is no distinction between ERISA procedures claims brought directly under ERISA § 1133 and those brought pursuant to the applicable regulation. *See e.g.*, *Walter*, 949 F.2d at 310 (finding that even though defendant violated C.F.R. § 2560.503.1, "ERISA does not provide a private cause of action for damages to compensate a petitioner for delay"); *Varney v. Verizon Commc'ns, Inc.*, No. 07-695, 2013 WL 1345211, at *16 (E.D.N.Y. Mar. 1, 2013) (dismissing Plaintiff's allegation that Defendants failed to comply with proper claims procedure brought under both 29 U.S.C. § 1133 and 29 C.F.R. 2560.503(1)(f)(1) because "failure to comply with ERISA regulations does not give rise to a private of action"); *Ranke v. Sanofi-Synthelabo, Inc.*, No. 04-1618, 2004 WL 2473282, at *7 (E.D. Pa. Nov. 2, 2004) ("Plaintiffs cannot seek to impose § 502(c) penalties for violation of a regulation, 29 C.F.R. 2560.503-(1)(h)(iii), especially one imposing requirements on plans rather than administrators."). Accordingly, Plaintiff's Count IV is dismissed.

In sum, Defendants' Motions to Dismiss are granted as they pertain to Count I, Count III and Count IV, and those counts are dismissed with prejudice. As to Count II, the motions are denied without prejudice.

**SO ORDERED.**

JOHN MICHAEL VAZQUEZ
UNITED STATES DISTRICT JUDGE

---

denied as well as providing beneficiaries an opportunity to participate in the review process. *See Walter v. Int'l Ass'n of Machinists Pension Fund*, 949 F.2d 310, 315-16 (10th Cir. 1991).